IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JACK E.,[1]

                  Plaintiff,

      v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

               Defendant.

Case No. 2:24-cv-01526-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Jack E. filed this appeal challenging the Commissioner of Social Security's

("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title

II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. §

405, and the parties have consented to the jurisdiction of a magistrate judge pursuant to 28

U.S.C. § 636(c). For the reasons explained below, the Court affirms the Commissioner's decision

because it is free of harmful legal error and supported by substantial evidence in the record.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case.

PAGE 1 – OPINION AND ORDER

**STANDARD OF REVIEW**

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). That is so because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in June 1981, and was thirty-eight years old on January 9, 2020, his alleged disability onset date.[2] (Tr. 113.) In his application, Plaintiff alleged disability as the result of "back problems due to one leg being shorter, complex [post-traumatic stress disorder ("PTSD")], plantar fasciitis in both feet, and chronic pain in left knee." (*Id.* at 282.)

The Commissioner denied Plaintiff's application initially and upon reconsideration. (*Id.* at 113, 122.) Plaintiff and an impartial vocational expert ("VE") appeared and testified at a hearing before an administrative law judge ("ALJ") on September 26, 2023. (*Id.* at 42-86.) On October 31, 2023, the ALJ issued a written decision denying Plaintiff's application. (*Id.* at 22-41.) On August 10, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's written decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff now seeks judicial review of that decision.

### II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

---

[2] To be eligible for DIB, "a worker must have earned a sufficient number of [quarters of coverage] within a rolling forty quarter period." *Herbert v. Astrue*, No. 1:07-cv-01016 TAG, 2008 WL 4490024, at *4 (E.D. Cal. Sept. 30, 2008) (citation omitted). Workers accumulate quarters of coverage based on their earnings. *Id.* Typically, "the claimant must have a minimum of twenty quarters of coverage [during the rolling forty-quarter period to maintain insured status]. . . . The termination of a claimant's insured status is frequently referred to as the 'date last insured' or 'DLI.'" *Id.* (citation omitted). Thus, Plaintiff's date last insured ("DLI") of September 30, 2021 (Tr. 26) reflects the date on which his insured status terminated based on the previous accumulation of quarters of coverage. If Plaintiff established that he was disabled on or before September 30, 2021, he is entitled to DIB. *See Truelsen v. Comm'r of Soc. Sec.*, No. 2:15-cv-2386-KJN, 2016 WL 4494471, at *1 (E.D. Cal. Aug. 26, 2016) ("To be entitled to DIB, plaintiff must establish that he was disabled . . . on or before his date last insured." (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998))).

which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *See Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *See id.* at 954. The Commissioner bears the burden of proof at step five, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. *See Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the sequential evaluation process to determine if Plaintiff was disabled. (Tr. 27-36.) At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of January 9, 2020 through his date last insured of September 30, 2021. (*Id.* at 28.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "post-traumatic stress disorder (PTSD)[;]

bipolar disorder, type II[;] attention deficit hyperactivity disorder (ADHD); lumbar spine degenerative disk disease; and a limb length discrepancy[.]" (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment that meets or medically equals a listed impairment. (*Id.* at 28-30.)

The ALJ then found that Plaintiff had the residual function capacity ("RFC") to perform medium work, subject to these limitations: (1) Plaintiff can occasionally climb ladders, ropes, or scaffolds; (2) he can frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; (3) he can have occasional exposure to extreme cold; (4) he can understand and perform simple, routine tasks; (5) he can perform low-stress jobs, defined as those having only occasional decision making required and only occasional changes in the work setting; and (6) he can occasionally interact with co-workers and the public. (*Id.* at 30.)

At step four, the ALJ found that Plaintiff could not perform his past relevant work. (*Id.* at 34.) At step five, the ALJ determined that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as an industrial cleaner, floor waxer, or package sealer. (*Id.* at 35.) Accordingly, the ALJ found that Plaintiff was not disabled from January 9, 2020, the alleged onset date, through September 30, 2021, the date last insured. (*Id.* at 36.)

## DISCUSSION

Plaintiff argues that the ALJ erred by improperly evaluating the medical opinions and discounting his symptom testimony, resulting in an RFC that was not supported by substantial evidence. (Pl.'s Opening Br. ("Pl.'s Br.") at 5-31, ECF No. 11.) As explained below, the Court concludes that the Commissioner's decision is free of harmful legal error and supported by substantial evidence.

## I.    MEDICAL OPINION EVIDENCE

Plaintiff's primary argument on appeal is that the ALJ erred in evaluating the state agency consultants' opinions because the ALJ found both to be "generally persuasive," despite minor differences in those opinions, without applying the "tie-breaking" regulation. (Pl.'s Br. at 11-19.) Plaintiff also argues that the ALJ did not adequately consider the supportability or consistency of the medical opinions. (*Id.*)

### A.    Applicable Law

"In January 2017, the Social Security Administration issued revised regulations for evaluating medical opinions relating to claims filed on or after March 27, 2017." *Cross v. O'Malley*, 89 F.4th 1211, 1214 (9th Cir. 2024) (citation omitted). The revised "regulations provide that ALJs will no longer 'defer or give any specific evidentiary weight' to any medical opinion."[6] *Id.* (quoting 20 C.F.R. § 416.920c(a)). Instead, "ALJ[s] must assess the persuasiveness of each medical opinion after considering specified factors." *Stiffler v. O'Malley*, 102 F.4th 1102, 1106 (9th Cir. 2024) (citing *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) and 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(b))).

Specifically, the revised "regulations require an ALJ to discuss the supportability and consistency of medical evidence—the factors the agency has historically found to be the most important in evaluating medical opinions—while allowing for discussion of other factors listed in paragraphs (c)(3) through (c)(5), as appropriate." *Cross*, 89 F.4th at 1215 (citing 20 C.F.R. § 416.920c(a)); *see also Woods*, 32 F.4th at 791 ("'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" (quoting 20 C.F.R. § 404.1520c(a))). "Supportability focuses on whether 'a medical source supports a medical opinion by explaining the relevant objective medical

evidence.'" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 791-92); *see also Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) ("Supportability concerns how 'a medical source supports a medical opinion' with relevant evidence[.]" (quoting *Woods*, 32 F.4th at 791-92)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources[.]" *Stiffler*, 102 F.4th at 1106 (quoting *Woods*, 32 F.4th at 792).

In addition to supportability and consistency, "[a]n ALJ may discuss other factors [listed in paragraphs (c)(3) through (c)(5)], such as the medical source's 'relationship with the claimant' or 'specialization,' but generally has no obligation to do so." *Cross*, 89 F.4th at 1214 (citing 20 C.F.R. § 416.920c(b)(2)). If, however, an "ALJ finds two or more contradictory medical opinions 'both equally well-supported . . . and consistent with the record[,]' . . . the regulations mandate discussion of these other factors." *Id.* at 1214-15 (quoting 20 C.F.R. § 416.920c(b)(3), (c)(3)-(5)).

A district court reviews the ALJ's evaluation of a medical opinion for substantial evidence. *See Woods*, 32 F.4th at 787 ("Now, [under the new regulations,] an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence."); *id.* at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."); *Metcalf v. Kijakazi*, No. 22-35201, 2022 WL 17592194, at *1 (9th Cir. Dec. 13, 2022) (observing that "under the revised regulations . . . , the ALJ's evaluation of a medical opinion is reviewed for substantial evidence" (citing *Woods*, 32 F.4th at 789)).

///

PAGE 7 – OPINION AND ORDER

B.    **Analysis**

1.    **State Agency Consultants**

Plaintiff argues that the ALJ erred by finding both state agency psychological consultants' opinions "generally persuasive," which Plaintiff interprets as "equally persuasive," without applying the "tie-breaking" regulation, and that the ALJ did not adequately consider the supportability or consistency of those medical opinions. (Pl.'s Br. at 11-19; Pl.'s Reply at 3-7, ECF No. 14.)

Two state agency psychological consultants reviewed Plaintiff's medical records and provided opinions on the extent of his limitations. In October 2021, Irmgard Friedburg, Ph.D. ("Dr. Friedburg"), opined that Plaintiff had moderate limitations in each of the "Paragraph B" criteria, and could persist at simple tasks over time; perform simple tasks with regular breaks during the workday; and have limited social interaction with the public and co-workers. (Tr. 116, 118-119.) On reconsideration in June 2022, Kevin Santulli, Ph.D. ("Dr. Santulli"), opined that Plaintiff had mild limitations in understanding, remembering, or applying information and adapting or managing oneself; had moderate limitations in interacting with others and concentrating, persisting, or maintaining pace; could perform simple tasks with regular breaks during the workday; and could have limited social interaction with the public and co-workers. (*Id.* at 125, 129.) In their opinions, the consultants explained that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (*Id.* at 118, 128.) Both consultants assessed the same functional limitations, i.e., that Plaintiff was limited to simple tasks and required reduced social interaction with the public and co-workers. (*Id.*; *see also id.* at 33.)

///

PAGE 8 – OPINION AND ORDER

The ALJ found both opinions "generally persuasive." (*Id.* at 33.) The ALJ noted that although there were slight variations in the "Paragraph B" criteria findings, "there are still only mild to moderate restrictions, and the general conclusions that Plaintiff was limited to simple task work and requires reduced social interaction with the public and co-workers is supported by and consistent with the totality of the treatment records, [Plaintiff's] mental status examinations, and his reported activities. (*Id.* at 33-34.)

Plaintiff argues that the ALJ erred in evaluating the consultants' opinions. First, Plaintiff argues that the ALJ erred by failing to "explain or discuss why these opinions were *equally* supported when Dr. Santulli assessed an additional mentally determinable impairment of [Attention-Deficit/Hyperactivity Disorder] with treatment and impaired mental status examinations." (Pl.'s Br. at 13.) Second, Plaintiff argues that the ALJ did not adequately consider the supportability or consistency of the opinions and erred by failing to discuss the "tie-breaking" factors listed in 20 C.F.R. § 404.1520c(c)(3) (i.e., frequency of examination, purpose of the treatment relationship, extent of the treatment relationship, examining relationship, and specialization). (*Id.* at 14-18.)

With respect to Plaintiff's first argument, he focuses on the difference in the consultants' "Paragraph B" findings regarding mild or moderate limitations in adapting and managing himself. (Pl.'s Br. at 12.) However, the ALJ found that Plaintiff was moderately limited in adapting or managing himself as relevant to the "Paragraph B" criteria (Tr. 29), and therefore any error was harmless. Further, the ALJ did not err in evaluating the consultants' opinions with respect to Plaintiff's RFC, because the ALJ's ultimate finding that Plaintiff was limited to simple work and required reduced social interaction with the public and coworkers was consistent with both consultants' opinions. (*Id.* at 33-34.)

With respect to Plaintiff's argument that the ALJ was required to discuss factors other than supportability and consistency under 20 C.F.R. § 404.1520c(b)(3) because the ALJ found both opinions "equally persuasive," the Court agrees with the Commissioner (*see* Def.'s Br. at 4-5, ECF No. 13) that (1) the "equally persuasive" regulation does not require an ALJ to choose the more persuasive opinion; (2) the ALJ found the consultants' opinions to be "generally persuasive," not "equally persuasive," and therefore the regulation does not apply; and (3) in any event, both consultants assessed the same functional limitations and therefore any error in reconciling the "slight" variations in the Paragraph B criteria was harmless.

Another federal district court rejected the same argument Plaintiff advances here in *Kelly B.R. v. Kijakazi*, No. 2:20-cv-00339-JHR, 2022 WL 204634, at *4 (D. Me. Jan. 23, 2022). In *Kelly B.R.*, the court held that "merely using the same descriptor for two or more opinions (e.g., 'not very persuasive') does not render them 'equally persuasive.'" *Id.* As here, the *Kelly B.R.* court noted that "[t]he ALJ neither characterized any two or more opinions or administrative findings as 'equally persuasive' nor made the underlying nuanced findings supporting such a characterization: that 'two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same[.]'" *Id.* Further, "[t]he plaintiff neither explain[ed] how, if at all, the ALJ abused her discretion in not making such findings on this record nor ma[de] a persuasive case that she was independently required to discuss the paragraph (c)(3)-(5) factors to elucidate her analytical pathway." *Id.* Therefore, "[i]n the absence of any error of law in the ALJ's failure to articulate findings concerning the paragraph (c)(3)-(5) factors, the plaintiff's bid for remand amounts to an unavailing request that the court reweigh the opinion evidence." *Id.* (citations omitted); *see also*

*Melissa W. v. Comm'r of Soc. Sec.*, No. 1:22-cv-00891 (JGW), 2025 WL 1929917, at *9 (W.D.N.Y. July 14, 2025) ("Merely using the same descriptor for two or more opinions, i.e. 'persuasive,' does not mean that the ALJ found the opinions 'equally persuasive.' In this case, the ALJ did not make such a finding, nor did her analysis imply such a finding." (citing *Kelly B.R.*, 2022 WL 204634, at *3-4)); *Rachel M.W. v. O'Malley*, No. 22-cv-557-MTS, 2024 WL 1008566, at *7 (N.D. Okla. Mar. 8, 2024) ("Further, Plaintiff raises the argument that because the ALJ determined the opinions of the consulting psychologist and the state agency psychologists were all 'somewhat persuasive,' the ALJ should have considered all the factors set forth in 20 C.F.R. § 920c(c), under the provision of the regulation wherein the ALJ determines there are two equally persuasive opinions on an issue . . . . However, as argued by Defendant, and this Court agrees, the ALJ's mere use of the same 'descriptor' regarding the persuasiveness of certain opinions 'does not render them equally persuasive.'" (simplified) (citing *Kelly B.R.*, 2022 WL 204634, at *4)).

As these other courts have noted, the regulation on which Plaintiff relies is triggered by an ALJ's finding that two or more opinions are "equally" persuasive, but the ALJ made no such finding here. *See* 20 C.F.R. § 416.920c(b)(3) (instructing that "[w]hen we find that two or more medical opinions or prior administrative findings about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision."). Thus, the Court finds that the ALJ did not err by not addressing paragraphs (c)(3) through (c)(5).

///

The Court further finds that the ALJ appropriately considered both the supportability and consistency of the state agency consultants' opinions. (Tr. 33-34.) The supportability factor requires ALJs to consider the persuasiveness of a medical opinion based on how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or his medical opinion." 20 C.F.R. § 404.1520c(c)(1). The consistency factor requires the ALJ to assess medical opinions' alignment with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Here, the ALJ reasonably concluded that both opinions were "supported by and consistent with the totality of the treatment records, the claimant's mental status examinations, and his reported activities." (Tr. 33-34.)

Substantial evidence in the record supports the ALJ's analysis. For example, the ALJ noted that Plaintiff received routine care for his anxiety. (*Id.* at 31.) Plaintiff reported an increase in nightmares in June 2020, which was believed to be related to a medication change and increase in anxiety, but he reported he felt "a lot better" in July 2020, and his sleep, anxiety, and mood had improved. (*Id.* at 31, 450-453.) In November 2020, Plaintiff discussed caring for his children, visiting with his parents, helping his uncle move, and driving to and from Portland. (*Id.* at 32, 429.) In May 2021, Plaintiff noted a stable sleep cycle, and reported several hobbies, including fishing, working on engines, woodworking/making furniture, and coaching tee ball. (*Id.* at 32, 396, 399.) Plaintiff's mental status examination at the time was normal outside of some anxiety, and he appeared motivated to address his PTSD. (*Id.* at 32, 397.) Plaintiff continued with routine care for his mental health issues through the date last insured. (*Id.* at 32.) The ALJ also highlighted Plaintiff's documented improvement with Ketamine treatment after his date last insured. (*Id.* at 32, 1224-25.) Substantial evidence in the record supports the state

agency consultants' consistent opinions that Plaintiff can perform simple tasks with reduced social interaction with the public and co-workers.

In sum, the Court finds that the ALJ did not err in evaluating the state agency medical consultants' opinions.

### 2.    Connie Carter, PMHNP

Plaintiff also suggests that the ALJ erred by discounting treating psychiatric nurse practitioner Connie Carter, PMHNP's ("NP Carter") opinion. (Pl.'s Br. at 16-19; *see also* Tr. 33, finding Carter's opinion "unpersuasive").

On December 5, 2019, NP Carter opined that Plaintiff was extremely limited in his ability to: 1) get along with supervisors, 2) complete an eight-hour workday without needing additional rest periods, and 3) perform work without getting distracted. (Tr. 499.) NP Carter explained that Plaintiff had difficulty engaging with people when triggered by his PTSD and while having panic attacks. (*Id.*) She stated he is unaware of when these problems would arise. (*Id.*) She also indicated that when he has a panic attack, his coping skill is to leave the environment or to be alone. (*Id.*) Finally, NP Carter indicated that when panicked, Plaintiff has difficulty maintaining focus and attention, and he would have difficulty maintaining regular attendance because of his daily panic attacks and this problem would escalate when he is under additional stress. (*Id.*)

The Court finds that the ALJ appropriately considered both the supportability and consistency of NP Carter's opinion. Concerning supportability, the ALJ reasonably discounted NP Carter's opinion because it did not relate to the relevant time period. (*Id.* at 33.) The ALJ noted that NP Carter provided her opinion in 2019, prior to Plaintiff's January 9, 2020, alleged onset date. (*Id.*) With respect to consistency, the ALJ noted that Plaintiff's current treatment records reflected that routine psychiatric care and medication management resulted in improvement in his symptomology and that he was able to engage in "a number of activities of

daily living." (*Id.*) The ALJ's findings were supported by substantial evidence in the record. (*See id.*, citing *id.* at 497-562, 1198-1259.) For these reasons, the Court concludes that the ALJ did not err in discounting NP Carter's opinion.

### 3.    Brittany Pryce, LISW

Plaintiff also suggests that the ALJ erred in discounting the opinion of Brittany Pryce, LISW ("Pryce"), Plaintiff's therapist. (Pl.'s Br. at 18-19; *see also* Tr. 33, finding that Pryce's opinion was "internal[ly] inconsisten[t]" and its "marked and extreme limitations are not supported by the claimant's mental status examinations, his own subjective reports, and his numerous activities").

On August 15, 2023, Pryce opined that Plaintiff had moderate limitations in the "B criteria," and marked limitations in his ability to get along with supervisors. (Tr. 1281.) Pryce also noted extreme limitations in Plaintiff's ability to complete an eight-hour workday without additional rest periods and perform work without being distracted. (*Id.*) Pryce indicated that she had treated Plaintiff since 2018 and that he was diagnosed with ADHD, generalized anxiety disorder with obsessive features/worry, and complex PTSD. (*Id.* at 1279-80.)

The Court finds that the ALJ appropriately considered the consistency and supportability of Pryce's opinion. Regarding supportability, the ALJ discounted Pryce's opinion as internally inconsistent. (*Id.* at 33.) The ALJ noted, for example, that Pryce's checkmarks on the second page of her opinion indicating that Plaintiff had mild to moderate limitations in several categories (including understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace) were inconsistent with her checkmarks on the next page indicating that Plaintiff was markedly limited in his ability to get along with supervisors and extremely limited in his ability to maintain attention, complete a workday, and work without getting distracted (*Id.* at 33, 1280-1281.) Plaintiff argues that the

ALJ is not qualified to identify inconsistencies in the opinion (Pl.'s Br. at 18), but the Court disagrees. For example, the ALJ's determination that Pryce's opinion that Plaintiff is moderately limited in interacting with others was internally inconsistent with her opinion that he is markedly limited in his ability to get along with supervisors does not require specialized training. The ALJ's interpretation of Pryce's opinion was reasonable.

The ALJ also found that Pryce's opinion regarding Plaintiff's marked to extreme limitations was inconsistent with the record (*Id.* at 33.) As summarized above, the ALJ cited medical records reflecting that Plaintiff's nightmares, anxiety, and mood issues improved with treatment and with Ketamine therapy, which contradicted Pryce's opinion about Plaintiff's marked and extreme limitations. (*Id.*) For all of these reasons, the Court finds that the ALJ's discounting of Pryce's opinion was supported by substantial evidence.

## II.    SUBJECTIVE SYMPTOM TESTIMONY

Plaintiff also argues that the ALJ erred by discounting his subjective symptom testimony. (Pl.'s Br. at 25-31; Pl.'s Reply at 9-12.) Defendant responds that substantial evidence supported the ALJ's evaluation of Plaintiff's symptoms. (Def.'s Br. at 10-13.)

### A.    Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the

claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted).

### B.    Analysis

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (Tr. 31.) The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ met that standard here.

### 1.    Plaintiff's Testimony

Plaintiff testified that he met with his psychiatrist every two months to check on his medications. (Tr. 64.) He reported that he was taking Latuda, amitriptyline, methylphenidate, and clonidine. (*Id.*) He also saw his therapist every week or two weeks. (*Id.*)

Plaintiff indicated he still has nightmares four times per week that cause him anxiety and ruin his day. (*Id.*) He reported that he has a "really short fuse." (*Id.* at 69.) Plaintiff angers easily and it is difficult for him to bring his emotions down once they are high. (*Id.* at 69-70.) Once things turn into an argument, Plaintiff tries to walk away or isolate. (*Id.* at 70.) It takes him an hour or two to settle down and he has to go to a different room. (*Id.*)

Plaintiff testified that he "chases his tail" around with seventy different tasks he is doing and does not finish them. (*Id.* at 71.) He believes that this problem is related to his ADHD. (*Id.*) He also suffers from panic attacks and flashbacks triggered by smells or sounds that may cause full panic attacks. (*Id.*) Plaintiff worries a lot about "little stupid things." (*Id.*) Even though he generally only drives his kids to school and back home, he still has problems doing that because trash on the road can remind him of improvised explosive devices ("IEDs") and sometimes he

panics. (*Id.* at 71.) At times, Plaintiff chooses to be away from people because he finds it difficult to be around them. (*Id.* at 72.)

When asked about his hobbies, Plaintiff reported that he does not really have any, but he tries to stay busy by reading, hanging around the house, and picking his kids up from school. (*Id.* at 66.) He reported that he last went fishing in 2020 or 2021. (*Id.* at 66-67.) Plaintiff does not really work on engines anymore and has not made furniture since 2019 or 2020. (*Id.*) Plaintiff guessed that he last coached his son in 2019. (*Id.* at 67.) Finally, when asked if he could perform his old job as a service writer, he stated that he did not think so because he would not be able to stay on task because he starts things and does not finish them. (*Id.* at 72.) When asked if he had a job where he did not have to be around people, such as stocking shelves, he testified that he would have trouble staying on task. (*Id.*)

Plaintiff also completed a function report in April 2022. (*Id.* at 318-25.) He reported that he has complex PTSD after two combat deployments and lives with the bad things he has seen and done and not bringing home his brothers. (*Id.* at 318.) Plaintiff's wife helps him to care for his dog and she does the shopping. (*Id.* at 319, 321.) He has vivid dreams about dead people he killed coming back to hunt him. (*Id.*) When he cannot sleep because of these nightmares, it ruins his day. (*Id.*) Chores take him all day, and he isolates a lot. (*Id.* at 320, 322.) Plaintiff often feels angry and feels as if he has nothing in common with others. (*Id.*) He has problems getting along with others and was fired from a job as a result. (*Id.* at 323.) He cannot be in crowds because it reminds him of his deployment. (*Id.* at 324.) When it is the anniversary of his friends' deaths, Plaintiff cries most of the day. (*Id.* at 325.) Little things set him off, like seeing trash on the road that reminds him of IEDs. (*Id.*) He struggles seeing his kids off to school. (*Id.*)

///

### 2.    The ALJ's Evaluation of Plaintiff's Testimony

The ALJ discounted Plaintiff's symptom testimony on several grounds. First, the ALJ noted that the records include "routine care for anxiety" and other impairments through his date last insured without any required hospitalizations or indication of decompensation. (*Id.* at 31-32.) In addition, Plaintiff reported improvement with therapy and medication, including "notable improvement with ketamine treatment" after his date last insured, and his mental status examinations were normal. (*Id.*) Plaintiff also appeared capable of maintaining relationships with friends and family and engaging in a number of activities. (*Id.*)

Nevertheless, the ALJ recognized that Plaintiff had some functional limitations resulting from his mental impairments, and therefore limited Plaintiff to "simple, low-stress work to accommodate his anxiety, PTSD, and ADHD symptoms," noting that "[t]he limitation to occasional interaction with co-workers and the public accommodates his reports of irritability and anger." (*Id.*)

### 3.    Clear and Convincing Reasons

The Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's testimony, and the ALJ's reasons were supported by substantial evidence in the record.

#### a.    Objective Medical Evidence

Plaintiff argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting his testimony based on conflicting objective medical evidence. (Pl.'s Br. at 26-28.)

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari,* *261 F.3d 853, 857 (9th Cir. 2001).* The ALJ may not, however, "discredit the claimant's

testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also* 20 C.F.R. § 404.1529(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements"). Nevertheless, an ALJ may discount a claimant's testimony where it is inconsistent with the objective medical evidence. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (affirming the ALJ's discounting of the claimant's testimony, in part, because it conflicted with the objective evidence); 20 C.F.R. § 404.1529(c)(4) (explaining that ALJs "consider whether there are any inconsistencies in the evidence and the extent to which there are conflicts between [a claimant's] statements and the rest of the evidence, including you history, the [medical] signs and laboratory findings, and statements by [] medical sources"); *id.* § 416.929(c)(4) (same).

The ALJ properly relied on objective medical evidence to discount Plaintiff's mental health symptom testimony here. At the hearing, Plaintiff testified about significant PTSD and ADHD-related symptoms that made it difficult for him to stay on task and interact with others. (*See* Tr. 66-72, 318-25.) In contrast to Plaintiff's allegations, however, the ALJ noted that medical providers repeatedly reported that Plaintiff's mood was appropriate (although sometimes anxious); his affect and eye contact were appropriate; his speech was normal; his thought processes were intact and organized; he was a good historian; his concentration was focused; and he was oriented to person, place, and time. (*Id.* at 29, citing, *inter alia*, *id.* at 397, 400, 403, 445, 487, 490.)

///

Plaintiff also alleged that he had difficulty sleeping, which contributed to his limitations. (*Id.* at 321.) However, the ALJ highlighted records reflecting that Plaintiff had "a stable sleep cycle" and a decrease in nightmares. (*Id.* at 32.) The ALJ further highlighted mental status examinations reflecting that Plaintiff "was normal outside of some anxiety." (*Id.*) The ALJ reasonably concluded that these records conflicted with, or demonstrated a lack of support for, Plaintiff's allegations of more significant limitations. (*Id.* at 29, 32.) As noted, there is substantial evidence in the record to support the ALJ's opinion discounting the severity of Plaintiff's mental health symptoms.

Plaintiff urges the Court to adopt a different interpretation of the record, but does not meaningfully address the substantial evidence supporting the ALJ's decision. Specifically, Plaintiff argues that the ALJ should have relied on other evidence and that the ALJ focused too narrowly on a few specific medical records. (*See* Pl.'s Br. at 27.) However, Plaintiff is asking the Court to re-weigh the evidence, which is beyond the scope of judicial review. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) ("We may not reweigh the evidence or substitute our judgment for that of the ALJ."); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld."). The Court finds that the ALJ properly relied on objective medical evidence to discount Plaintiff's symptom testimony.

### b.    Improvement with Treatment and Medication

Plaintiff argues that the ALJ failed to provide clear and convincing reasons supported by substantial evidence for discounting his testimony based on his improvement with treatment and medication. (*See* Pl.'s Br. at 29-30.)

An ALJ may discount a claimant's testimony based on evidence that the claimant's symptoms improved with treatment or medication. *See Walker v. Kijakazi*, No. 22-35351, 2023

WL 3017946, at *1 (9th Cir. Apr. 20, 2023) (concluding that the ALJ had provided specific, clear, and convincing reasons for discounting the plaintiff's subjective symptom testimony where substantial evidence demonstrated that the plaintiff's pain improved with treatment and medication); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability.") (citations omitted).

For example, in *Burkett v. Saul*, 806 F. App'x 509, 512 (9th Cir. 2020), the Ninth Circuit held that the ALJ provided clear and convincing reasons for discounting the claimant's symptom testimony, and in doing so, noted that the ALJ appropriately found that the claimant's testimony was inconsistent with, *inter alia*, "record evidence that her depression [was] well controlled (when on medication regularly)." *Id.* (simplified); *see also Darling v. Kijakazi*, No. 22-35594, 2023 WL 4103935, at *2 (9th Cir. June 21, 2023) (holding that the ALJ provided clear and convincing reasons to discount the claimant's symptom testimony, including "treatment efficacy[] and longitudinal improvement"); *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (explaining that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for [disability] benefits").

The ALJ discounted Plaintiff's testimony regarding the severity of his mental health symptoms in part because the medical record reflects that Plaintiff's symptoms improved with therapy and medication. (Tr. 31-32.) This was a clear and convincing reason to discount Plaintiff's symptom testimony. *See, e.g.*, *Gerard C. v. O'Malley*, No. 23-cv-00018-JLB, 2024 WL 1298009, at *7 (S.D. Cal. Mar. 26, 2024) (holding that the ALJ appropriately "relied upon evidence that Plaintiff improved with medication and other treatment in discounting Plaintiff's

symptom testimony" where "the records from both within and beyond the insured period

demonstrate improvement of Plaintiff's anxiety and panic attacks with medication and therapy");

*Max H. v. Kijakazi*, No. 6:21-cv-611, 2022 WL 3010184, at *6 (D. Or. July 29, 2022) (holding

that "improvement with treatment was a clear and convincing reason supported by substantial

evidence to discount Plaintiff's testimony about his mental health" where "Plaintiff's treatment

notes reflect[ed] that Plaintiff consistently expressed improvement in his PTSD and anxiety and

successfully used the tools learned in therapy").

      The ALJ's observation that Plaintiff's symptoms improved with therapy and medication

is supported by substantial evidence in the record. For example, the ALJ considered Plaintiff's

July 2020 report of improved sleep, anxiety, and mood; his August 2020 report that his

nightmares had not been bothering him and his sleep and mood had improved; his April 2021

report of notable improvement in sleep with only one nightmare; and his May 2021 report of a

stable sleep cycle. (Tr. 32-33.) The ALJ also cited evidence that Plaintiff had "notable

improvement" with Ketamine treatment following his date last insured. (*Id.* at 32.)

      For these reasons, the Court finds that the ALJ cited clear and convincing reasons,

supported by substantial evidence, to discount Plaintiff's symptom testimony.[3]

///

///

---

[3] The Court does not address Plaintiff's other arguments because the ALJ provided at least one clear and convincing reason, supported by substantial evidence, to discount his symptom testimony. *See Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discount of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [it] as not credible"). In addition, Plaintiff's argument that the RFC did not reflect all of his limitations (Pl.'s Br. at 19-25), is "derivative of h[is] preceding arguments addressed and rejected above." *Hairston v. Saul*, 827 F. App'x 772, 773 (9th Cir. 2020).

## CONCLUSION

For the reasons stated, the Court AFFIRMS the Commissioner's decision because it is free of harmful legal error and supported by substantial evidence.

**IT IS SO ORDERED.**

DATED this 14th day of October, 2025.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge